IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, <br> AIS 264274, <br><br> Plaintiff, <br><br> v. <br><br> DR. TAHIR SIDDIQ, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. 2:21-CV-180-ECM-KFP <br> ) <br> ) <br> ) <br> ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

Pro se Plaintiff John Kister is confined at the Bibb Correctional Facility in Brent, Alabama. Kister brings this 42 U.S.C. § 1983 action based on the allegation that his federally protected rights were violated through a failure to provide adequate medical care. Doc. 1 at 4–5; Doc. 1-1. Kister names as defendants Dr. Tahir Siddiq, Certified Registered Nurse Practitioner Maria Wynn, and Wexford Health Sources, Inc. Docs. 1, 6. Kister requests trial by jury and seeks damages in the amount of $5,000 from each Defendant and injunctive relief in the form of a referral to a dermatologist. Doc. 1 at 6; Doc. 7.

Defendants filed an Answer and Special Report with affidavits and medical records addressing Kister's claims. Docs. 12, 16. The Court directed Kister to file a response supported by affidavits, sworn or verified declarations, or other statements made under penalty of perjury. Doc. 17 at 1–2. Kister filed several declarations and responsive materials. *See* Docs. 18–22, 30.

The Court previously informed the parties that it may, at any time after the deadline for Kister to file a response and without further notice, treat the special report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment and rule on the motion in accordance with the law after considering any response. Doc. 17 at 2. Pursuant to that disclosure, the Court now treats Defendants' Special Report as a motion for summary judgment and concludes it is due to be GRANTED.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## III.   RELEVANT FACTS[1]

Kister filed this action on March 1, 2021, while incarcerated at Bullock Correctional Facility. As noted above, he is now incarcerated at Bibb Correctional Facility. Kister alleges that Defendants' challenged conduct began in February 2021 and was ongoing when he filed the Complaint. Doc. 1 at 4. Kister has various skin issues, including seborrheic dermatitis on his face, scalp, back, and chest. Doc. 1 at 5; Doc. 1-1 at 1. To treat his symptoms, Kister received a prescription for Triamcinolone. Doc. 1 at 5. When Kister requested treatment by a specialist or dermatologist, Nurse Wynn informed him that inmates are not sent to dermatologists. *Id.* Nurse Wynn told Kister he would be seen by Dr. Siddiq, but Kister states the doctor never examined him. *Id.* The condition of his skin caused him to be ridiculed, ostracized, harassed, and accused of

---

[1] Where facts are in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992). Accordingly, the facts set forth here are viewed in Plaintiff's favor for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400, *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) (citation omitted) (explaining that "what we state as 'facts' . . . for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts").

having a communicable disease, which negatively affected his mental health. *Id.*; Doc. 1-1.[2]

Nurse Wynn is a licensed nurse practitioner who was employed by Wexford during the relevant period. Doc. 16-1 at 1–2. Nurse Wynn testifies that Kister's seborrheic dermatitis has been a medical condition since his childhood. Doc. 16-1 at 2. In January 2021, Kister reported that the medication prescribed for his skin condition, Triamcinolone, was no longer working. *Id.* at 3. Nurse Wynn ordered Clotrimazole 1% cream for Kister, but he subsequently requested that he be restarted on Triamcinolone. *Id.* Although Nurse Wynn offered another medical treatment for Kister, he persisted in his request for Triamcinolone. *Id.* Nurse Wynn testified that, because Kister's dermatological condition is not emergent in nature and can be treated at Bullock's healthcare unit, it is not medically necessary that he be seen by an outside dermatologist for his skin condition. *Id.*

Dr. Siddiq, a licensed physician who provides medical care for inmates at Bullock, testified that he saw Kister about his seborrheic dermatitis, a common skin condition, and affirms that it is chronic, non-emergent, and does not threaten Kister's well-being. Doc.

---

[2] Kister signed the Complaint (Doc. 1), the Declaration in Support of Complaint (Doc. 1-1), and Declarations of Evidence (Docs. 21, 30) under penalty of perjury. Therefore, the Court will treat these pleadings and documents as evidence when ruling on the motions for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019). Kister's other responses (Docs. 18, 19, 20, 22), however, are unsworn and not signed with an averment they were made under penalty of perjury. *See* 28 U.S.C. § 1746. Therefore, the Court does not treat their factual assertions as evidence on summary judgment. *Sears,* 922 F.3d 1206; *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (holding that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment"); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's] claim" on summary judgment); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (explaining that unsworn statements, even by pro se parties, should not be "consider[ed] in determining the propriety of summary judgment").

16-3 at 2. Dr. Siddiq confirms that the medications prescribed by Nurse Wynn were appropriate medications for Kister's condition. *Id.* at 2. Both Dr. Siddiq and Nurse Wynn affirm that Kister's medical records show that he has been seen and treated in response to requests for treatment of his seborrheic dermatitis. Doc. 16-1 at 3; Doc. 16-3 at 2; *see also* Doc. 16-2 (Plaintiff's medical records).

## IV. DISCUSSION

### A. Injunctive Relief

As mentioned above, in addition to damages, Kister also seeks the injunctive relief of being referred to a dermatologist. However, a request for declaratory or injunctive relief becomes moot upon the transfer or release of the inmate from the facility where his cause of action arose. *See, e.g., Wahl McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (holding that "an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred"). When a plaintiff seeks injunctive relief, past injury "'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)); *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (citation and quotation marks omitted) (observing that, "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past").

Dr. Siddiq and Defendant Wynn examined him while he was at Bullock and did not refer Kister to a dermatologist. He now has different medical professionals to oversee his

5

care at his current facility. Because he is no longer incarcerated at Bullock, his request for injunctive relief against the Defendants at that facility is moot.

> B.    **Plaintiff's Deliberate Indifference Claim**
>
>> 1.    **Standard of Review**

Dr. Siddiq and Nurse Wynn (the "medical defendants") deny Kister's claims of deliberate indifference.[3] Doc. 16. In *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court determined that deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment. "To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Roy*, 53 F.4th at 1346–47 (citation omitted).

A claim for deliberate indifference has both an objective and a subjective component. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). The objective component requires Kister to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so

---

[3] Defendants Siddiq and Wynn filed an Answer (Doc. 13) asserting, among other things, sovereign and qualified immunity. They did not rely on these defenses in their Special Report, and, furthermore, their briefing indicates they worked for Wexford, the prison healthcare contractor, at the time of the challenged conduct. *See* Doc. 16. Thus, as employees of the contract healthcare provider, the medical defendants' qualified immunity argument would be foreclosed by *Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *amended*, 205 F.3d 1264 (11th Cir. 2000). In *Hinson*, the Eleventh Circuit relied on the reasoning of *Richardson v. McKnight*, 521 U.S. 399 (1997), where the Supreme Court declined to extend qualified immunity to privately employed prison guards, to hold that qualified immunity may not be extended to privately employed prison physicians. Based on *Hinson*, the medical defendants cannot claim the protection of qualified immunity. In addition, for similar reasons that the *Hinson*, *Edwards*, and *Richardson* courts declined to extend the doctrine of qualified immunity, the medical defendants would not be entitled to sovereign immunity, as it is reserved for the state and its employees.

obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citation and internal quotation marks omitted).

The subjective component has three subparts and requires Kister to demonstrate that a defendant had subjective knowledge of the risk of harm, consciously disregarded that risk, and acted with more than gross negligence.[4] *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (citations and internal quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*.

However, medical treatment need not be "perfect, the best obtainable, or even very good," and "[a] prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't. of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation and internal quotation marks omitted). Only medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" violates the Eighth Amendment. *Id.* (citation and internal quotation marks omitted). An inmate who received care but disagrees with the course of treatment provided

---

[4] The undersigned notes that in a recent Eleventh Circuit decision, the Court observed that "[o]ur cases say both that the standard is 'more than mere negligence' and that it is 'more than gross negligence.'" *Johnson v. Lewis*, 83 F.4th 1319, 1327 n.2 (11th Cir. 2023) (comparing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) with *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)).

or desired another type of treatment cannot, without more, show deliberate indifference. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Thus, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266 (citation and internal quotation marks omitted) (alteration in original). Deliberate indifference requires that a defendant intentionally failed to provide medical care. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

### 2.     The Medical Defendants

Kister challenges the adequacy of treatment he received for his chronic affliction with seborrheic dermatitis, including a failure to refer him to an outside dermatologist. The medical defendants maintain that Kister received appropriate medical care at all times and that the medical care was not delayed or denied. Docs. 16-1, 16-3. Assuming Kister's condition presents a serious medical need, he presents no evidence sufficient to create a genuine dispute of material fact regarding the claim that the medical defendants acted with deliberate indifference to his medical needs.

Although Kister claims he should have received different medical care or should have been seen by an outside specialist for his skin issues, his evidence supporting these claims is unpersuasive. The only evidence about these allegations are Kister's sworn Complaint (Doc. 1), Declaration in Support of Complaint (Doc. 1-1), and Declarations of Evidence (Docs. 21-1 through 21-5 and Docs. 30-1 through 30-3). The Court has carefully reviewed Kister's evidentiary material, which consists of: (1) a sick call request dated August 11, 2020, for shampoo to treat the dermatitis on his scalp; (2) a sick call request

dated November 16, 2020, seeking a prescription renewal for Triamcinolone cream; (3) a medical grievance dated January 29, 2021, requesting an appointment with a dermatologist; (4) an appeal grievance dated February 11, 2021, complaining that Dr. Siddiq did not examine him on February 8, 2021, as he was informed; and (5) a sick call request dated June 12, 2020, asking to see a dermatologist about his skin condition. Doc. 21, Docs. 21-1 through 21-5. Kister's evidence also includes: (1) a physician's note dated July 21, 2020, which reflects medical staff was informed of his skin condition; (2) a sick call request dated November 4, 2020, to renew a shaving profile; and (3) a copy of a prescription for Triamcinolone dated November 17, 2020. Doc. 30; Docs. 30-1 through 30-3. Kister claims this evidence shows the medical defendants knew of his skin issues for months but did not provide adequate treatment. Doc. 30 at 1.

Review of Kister's medical records reflect the medical defendants and other medical staff provided treatment, including medication, for his skin condition while he was at Bullock. "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (internal quotations and citation omitted). And as explained, "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001); *Hamm*, 774 F.2d at 1575. The law likewise provides that an inmate is not entitled to referral to an outside physician for evaluation. *See Amarir v. Hill*, 243 F. App'x 353, 354 (9th Cir. 2007) (holding that defendant's "denial of

9

[the inmate-plaintiff's] request to see an outside specialist . . . did not amount to deliberate indifference"); *Arzaga v. Lovett*, 2015 WL 4879453, at *4 (E.D. Cal. Aug. 14, 2015) (finding that plaintiff's preference for a second opinion is "not enough to establish defendant's deliberate indifference," as the allegation did not show defendant "knowingly disregarded a serious risk of harm to plaintiff" nor that defendant "exposed plaintiff to any serious risk of harm"); *Youmans v. City of New York*, 14 F. Supp. 3d 357, 363–64 (S.D. N.Y. 2014) (observing that "courts in the Second Circuit have held that failure to provide a second opinion is not generally a violation of a prisoner's Eighth Amendment rights").

> As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with "a sufficiently culpable state of mind." [*Farmer*, 511 U.S. 825, 837–38 (1994)] (quotation omitted). Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show "subjective recklessness as used in the criminal law." [*Id*. at 839–40.] Indeed, even where "prison [or medical] officials . . . actually knew of a substantial risk to inmate health or safety," they may nonetheless "be found free from liability if they responded reasonably to the risk"—and, importantly for present purposes, "even if the harm ultimately was not averted." [*Id*. at 844.]

*Swain v. Junior*, 961 F.3d 1276, 1285–86 (11th Cir. 2020).

In this case, Kister has not identified any specific facts nor provided evidence that could create a triable jury issue on whether the conduct of Dr. Siddiq or Nurse Wynn was deliberately indifferent to his medical needs. Although Kister complains of not receiving appropriate or adequate treatment, including not receiving a referral to a specialist and not seeing Dr. Siddiq on one occasion, nothing in the record evidence demonstrates his condition required treatment by a specialist or that the course of treatment provided by the medical defendants "presented a substantial risk of serious harm . . . but [they] persisted in

the course of treatment anyway." *Campbell v. Sikes*, 169 F.3d 1353, 1370 (11th Cir. 1999). Kister has also not presented evidence indicating the medical defendants were subjectively aware of any serious medical condition regarding his skin condition but consciously disregarded the risk of harm. Deliberate indifference requires that a defendant knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837–38; *see also Estelle*, 429 U.S. at 105 (explaining that imperfect medical treatment, "although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain").

Kister received care for his skin condition. His allegations tend only to reflect his disagreement with the medical treatment provided. However, "[i]t is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate." *Abel v. Lappin*, 661 F. Supp. 2d 1361, 1373 (S.D. Ga. 2009) (citing *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)); *see also Monteleone v. Corizon*, 686 F. App'x 655, 659–60 (11th Cir. 2017) (citation omitted) (holding that failing to use a more effective medication may have constituted negligence but did "not rise to the level of deliberate indifference"). Further, no evidence has been presented that the course of treatment undertaken by the medical defendants was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505 (citation and internal quotation marks omitted).

Kister has failed to submit sufficient evidence to establish the elements of his deliberate indifference relating to the medical defendants' treatment of his skin condition.

Consequently, Kister has failed to establish the medical defendants violated his Eighth Amendment rights; therefore, their motion for summary judgment is due to be granted.

### 3. Wexford Health Sources, Inc.

If the Court construes Kister's Complaint to assert that Wexford has a policy or custom that resulted in Defendants' deliberate indifference to his skin condition, this claim is unavailing. Kister not only fails to allege any facts supporting such a finding, but he fails to identify any policy or custom that led to his injuries.

The law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and internal quotation marks omitted). The Eleventh Circuit has extended that rule to private corporations like Wexford. *See, e.g., Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Where the state and the entity enter a contractual agreement, the private healthcare company is a "person" acting under color of state law and, thus, may be liable under § 1983. *Howell v. Evans*, 922 F.2d 712, 723–24 (11th Cir.), *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), and *opinion reinstated sub nom. Howell v. Burden*, 12 F.3d 190 (11th Cir. 1994) (internal citation omitted). Through the contract, the private entity also "performs a function traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig*, 643 F.3d at 1310 (citation and internal quotation marks omitted). Accordingly, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable on a theory of respondeat superior), a private entity

providing medical services to inmates under a contract with the state is only liable under § 1983 when it employs a custom or policy constituting deliberate indifference to an inmate's serious medical need. *See Howell*, 922 F.2d at 724 n.13 (noting that the policy or custom analysis applied to a corporation is the same as the analysis applied to municipalities under *Monell*). To hold a defendant liable as a supervisory official, a plaintiff must show that "the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269.

The challenged policy or custom need not be express. A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is any practice that is "so settled and permanent" as to carry the force of law. *Id*. To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury and, instead, reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show the practice at issue is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred." *Id*. (quoting *Est. of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

Here, Kister has produced insufficient evidence to show a genuine dispute of material fact as to any policy or custom of Wexford reflective of deliberate indifference to

13

his serious medical needs. Specifically, Kister identifies no facts and produces no evidence of a custom or policy of Wexford to withhold medically necessary medical care or treatment and no evidence of any permanent widespread practice to deny necessary medical care or treatment. *See Craig*, 643 F.3d at 1310 (explaining that to impose liability under § 1983 a plaintiff must prove that a municipality had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right). Accordingly, Wexford's motion for summary judgment is due to be granted on Kister's Eighth Amendment claim.

## V.     SUPPLEMENTAL JURISDICTION

Although it does not appear that Kister alleged any state-law claims with his federal claims under § 1983, construing the Complaint liberally, it implicates the state torts of negligence or medical malpractice. These claims are subject to dismissal, as review is only appropriate upon exercise of the Court's supplemental jurisdiction. *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (quotation marks and citations omitted) (holding that "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact"); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (finding the exercise of supplemental jurisdiction is discretionary). In the posture of this case, the exercise of supplemental jurisdiction is inappropriate based on the Court's dismissal of all the claims over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3) (allowing district courts to decline to exercise supplemental jurisdiction over a

claim where "the district court has dismissed all claims over which it has original jurisdiction").

## VI.     CONCLUSION

For these reasons, the Magistrate Judge RECOMMENDS the following:

1. Defendants' Special Report (Doc. 16) be CONSTRUED as a motion for summary judgment and the motion be GRANTED in favor of Defendants on all claims.

2. The Court DECLINE to exercise supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(c)(3) and DISMISS these claims without prejudice.

3. This case be DISMISSED with prejudice.

4. Costs be TAXED against Plaintiff, for which execution may issue.

Further, it is ORDERED that by **November 27, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. 11TH CIR. R. 3-1.

DONE this 13th day of November, 2023.

                                              /s/ Kelly Fitzgerald Pate
                                              KELLY FITZGERALD PATE
                                              UNITED STATES MAGISTRATE JUDGE